KENNEDY, Justice
(dissenting).
In its original consideration, the majority held that the trial court properly entered a j.n.o.v. I dissented from that holding, and, for the same reason as I then dissented, I now dissent from the denial of the plaintiffs application for rehearing.
■ Because this case was filed before the abolition of the “scintilla” evidence rule, see § 12-21-12, Ala.Code 1975, the trial court’s judgment was improper and must be reversed if there is a scintilla of evidence showing proximate cause. Stated differently, this *1050 Court could not properly affirm the j.n.o.v. if there was any evidence, however slight, to support the verdict. King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 715-16 (Ala.1987). Moreover, in evaluating the evidence for this scintilla of proof, the Court must view the evidence in a light most favorable to Lowery. See Warren v. Ousley, 440 So.2d 1034 (Ala.1983).
In my view, Lowery presented a scintilla of evidence on the question of proximate cause. The majority rejected, without discussion, evidence that surely presents a scintilla of evidence, the testimony of Dr. John Goff.
According to the majority, the dispositive question posed by the proximate cause issue, was whether there was adequate proof that had the board reviewed the matter, it would have approved a placement of Stuart with his aunt. As the majority concedes, Goff testified that he would not have recommended such a placement. The majority suggests, however, that undisputed evidence shows that Goff would have been “out-voted” by other board members, specifically, Dr. Salil-las and Dr. Osmond. Yet, based on the majority’s discussion of the evidence, one could not reasonably conclude that had such a vote been held, they would have voted other than as Dr. Goff voted.
There was evidence at trial that the board had veto power over treatment team decisions about releases.[1] R. 446-47. Dr. Salil-las also gave testimony indicating that although he would not follow this rule, board review of discharges was “a command rule.” R. 462.
From Dr. Salillas’s testimony that he would not have referred the matter of Stuart’s release to the board, the majority evidently reaches the strained inference that if the board had reviewed Stuart’s release, Salillas would have voted for a release to Stuart’s aunt. Even if this were a reasonable inference, to so infer would require the majority to improperly view the evidence in a light most favorable to the defendants, rather than to Lowery.
As to Dr. Osmond, the majority finds it dispositive that he testified only that he believed the review board would have approved Stuart’s release. Note that the majority does not point to any testimony from Os-mond that a discharge to Stmrt’s aunt would have occurred, the critical question.
For the foregoing reasons, I respectfully dissent from the denial of the application for rehearing.

. I note that although Dr. Salillas later offered contradictory testimony, he testified that after the board has reviewed a potential discharge "then the board decides whether the patient is indeed ready for discharge.”