BEATTY, Justice.
This is an appeal by co-defendant Frue-hauf Corporation (“Fruehauf”) from a judgment based on a jury verdict in plaintiff Donnell Welch’s action against Frue-hauf and Kenworth of Dothan, Inc. (“Ken-worth”), based on fraud. Fruehauf appeals from the trial court’s denial of its post-judgment motions for judgment notwithstanding the verdict or in the alternative a new trial or in the alternative a remittitur. We affirm.
In early April 1984, Donnell Welch went to the offices of Kenworth in order to purchase a dump trailer for his fertilizer and trucking business. He spoke with Gil Brannon, a salesman for Kenworth, and Tom Bledsoe, Kenworth’s president. Ken-worth was a “parts and/or truck equipment dealer” for Fruehauf, and Brannon recommended that Welch buy a Fruehauf trailer. Welch and Brannon had an understanding that this trailer was to be a new 1984 model trailer, the current year model.
At Welch’s request, Brannon attempted to locate a Fruehauf trailer that had the desired specifications, viz., a new dump trailer with a length of 30 to 33 feet. Brannon contacted Larry McRae, a regional sales representative for Fruehauf, and asked him to check on the availability of a new trailer with the appropriate specifications. Neither Brannon nor McRae disputes the fact that Brannon did not request a specific year model but merely asked for a “new” trailer. To Brannon, “new” meant “1984,” yet McRae testified that his definition of a “new” trailer is one that has “never been titled.”
At this point, the evidence adduced at trial conflicted sharply. According to Brannon, McRae called him back and told him that Fruehauf “had a new trailer sitting in Memphis, Tennessee.” Brannon testified that, although the model year was never mentioned, he assumed it was a 1984 model. On the other hand, McRae testified as follows:
“A. I called Gil [Brannon] back and I told him — I said, ‘This is what I’ve been able to find. These trailers are very close to what you have asked for, but they were manufactured in 1982,’ but I said, ‘The good news is they will have a lower price than I could sell you a 1984 model for.’
“Q. What did he say?
“A. He told me then — he said, ‘That is good, because the customer wants the trailer to meet the specifications that he’s asked for, but he’s also hunting a low price.’ ”
While McRae argues that he offered Brannon a 1982 trailer at a discount of about $2,500, Brannon contends that McRae never mentioned either the purported discount or the specific model year.
In order to locate this particular trailer in Fruehauf’s widespread inventory, McRae examined a “new trailer availability report.” This document revealed that Frue-hauf's Memphis branch had a 33-foot dump trailer in stock that had the serial number 4CF-003003. The report also showed that this trailer was a 1982 model.
After McRae told Brannon that he had located a trailer, Brannon met with Welch to discuss the financing arrangements and the trailer’s specifications. During this meeting, Brannon and Welch each spoke with McRae over the telephone in order to *504 get more information about the trailer. Welch testified that he told McRae that he wanted a new 1984 model dump trailer with its improved features. According to Welch, McRae stated that the trailer in question was a “new” trailer but never mentioned a specific model year. McRae testified that he did not remember talking to Welch but did not rule out the possibility that he did.
After these discussions, Welch decided to purchase the trailer, with Kenworth buying it from Fruehauf and simultaneously reselling it to Welch. This transaction occurred on April 18, 1984, with an exchange of documents between Kenworth and Frue-hauf’s New Orleans branch office. Among the documents received by Kenworth was a Manufacturer’s Certificate of Origin (“MCO”) and an equipment invoice prepared by a clerk in the New Orleans office of Fruehauf. The MCO described the trailer, gave the vehicle identification number (“VIN”), and stated that the year of manufacture and the model year were both 1984. The clerk testified that McRae had given her most of the information regarding the trailer over the telephone, but claimed that her designation of the trailer as a 1984 model was a clerical error and that McRae never told her that it was a 1984 trailer. On cross-examination, however, she conceded that she did not remember the actual conversation that she had with McRae.
Thereafter, Welch sent a driver to pick up the trailer directly from Fruehauf’s branch office in Memphis. Although the trailer was never in Kenworth’s possession, Kenworth did file an application for certificate of title with the Alabama Department of Revenue on behalf of Welch. This application stated that the trailer was a 1984 model and that the VIN was 1H4D03328CF003003. Tom Bledsoe of Kenworth testified that he relied on the MCO in completing the application for title.
Several weeks later, the Department of Revenue sent Kenworth a request for corrected documents, stating that the model year cited on the application and the MCO did not match the correct model year as revealed by the VIN. Unknown to Ken-worth and Welch, the VIN contained a code that established that the trailer was of 1982 vintage. The tenth position in the alphanumeric VIN stands for the model year; “A” designates a 1980 model, “B” designates a 1981 model, and “C” designates a 1982 model, etc.[1] Kenworth immediately informed Welch that his trailer was actually a 1982 model. Thereafter, Ken-worth requested a new MCO from Frue-hauf but later withdrew the request.
Over the next several months, Welch had to replace several rubber items on the trailer because they had deteriorated in storage. These purchases totaled $3,068.08 and included four new tires, air hoses, rubber grommets, and hydraulic seals. In addition, several witnesses testified as to the difference in value between a new 1984 model trailer and a “new” (unused) 1982 model trailer at the time of Welch’s purchase. The estimates ranged from $3,000 to $6,000, not including any parts needing to be replaced.
On September 27, 1984, Welch filed this action against Kenworth based on fraud. In its answer, Kenworth joined Fruehauf as a third-party defendant, and Welch later amended his complaint to state a claim in fraud against Fruehauf as well. Fruehauf then filed a cross-claim against Kenworth. The case proceeded to trial before a jury, which returned a verdict in favor of Welch and against Fruehauf in the amount of $109,000; $9,000 compensatory and $100,-000 punitive damages. In addition, the jury found for the third-party defendant on Kenworth’s third-party complaint and for the cross-defendant on Fruehauf’s cross-claim. Judgment on the verdict was entered, and Fruehauf’s post-judgment motions were denied. This appeal followed.
Two issues are presented for our review:
*505 (1) Did the trial court err in denying Fruehauf s motions for directed verdict and judgment notwithstanding the verdict?
(2) Did the trial court err in upholding the jury’s award of punitive damages?
I.
Fruehauf first argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. In order to succeed on either motion, Fruehauf must have shown that, from the evidence before the trial court at the time each motion was made, there was “a complete absence of proof on a material issue or [that there were] no controverted questions of fact on which reasonable people could differ,” and that Fruehauf was entitled to a judgment as a matter of law. Elrod v. Ford, 489 So.2d 534, 537 (Ala.1986), quoting Deaton, Inc. v. Burroughs, 456 So.2d 771, 773 (Ala.1984).
The issue is whether the record contains a scintilla of evidence favorable to the plaintiff showing that Fruehauf fraudulently misrepresented the trailer’s model year. Welch presented evidence from which the jury could have reasonably inferred that McRae knew that Welch wanted a 1984 model yet deliberately misled him into purchasing a 1982 model. On the other hand, Fruehauf claims that the sale was fair and that the designation of the trailer as a 1984 model on the MCO was an innocent mistake. Since the evidence in this case was in sharp conflict, the trial court properly denied Fruehauf’s motions for directed verdict and judgment notwithstanding the verdict. “Such motion[s] should be denied if there is any conflict in the evidence for the jury to resolve and the existence of such conflict is to be determined by the scintilla rule.” Crigler v. Salac, 438 So.2d 1375, 1385 (Ala.1983), quoting Hanson v. Couch, 360 So.2d 942, 944 (Ala.1978). We find that the plaintiff’s evidence was sufficient to raise a reasonable inference in support of his complaint.
II.
Fruehauf argues that the evidence presented was insufficient to support an award of punitive damages based on fraud.
“The definition of ‘legal fraud’ in Alabama may be found in § 6-5-101, Code of Ala. (1975):
“ ‘Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.’
“Regardless of whether the representations were made willfully, recklessly, or mistakenly, actionable fraud may be proved upon showing (1) a false representation, (2) concerning a material existing fact, (3) upon which representation the plaintiff relied, and (4) as a proximate result was damaged. Cotton States Mutual Insurance Co. v. Thigpen, 448 So.2d 314 (Ala.1984); International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977).
[[Image here]]
“... In order to recover punitive damages, in cases of fraud, the plaintiff must show that a misrepresentation was made with knowledge of its falsity and with an intent to injure. Furthermore, the fraud committed must be gross, malicious, or oppressive. Cecil Crews Ckevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala.1981).”
General Sales Co. v. Miller, 454 So.2d 532, 534 (Ala.1984).
In the case at bar, the plaintiff produced evidence from which the jury could have reasonably concluded that the Fruehauf salesman, Larry McRae, deliberately misled Welch and Kenworth into purchasing a 1982 model trailer that they believed to be a 1984 model. As shown before, Welch told McRae that he wanted to buy a 1984 model trailer. McRae then sold Welch a trailer that McRae knew to be a 1982 model, yet the key document (the MCO), the information for which was furnished by McRae, falsely stated that the model year was 1984. The conflicting inferences arising from the testimony as a whole presented a question for the jury.
*506 “Whether sufficient conflicting evidence exists to warrant consideration by a jury is determined by testing the evidence against the ‘scintilla rule,’ which requires that a question go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes the smallest trace, or a scintilla, in support of the theory of the complaint. Warren v. Ousley, 440 So.2d 1034 (Ala.1983); Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).”
Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 303 (Ala.1986).
The evidence in this case supports an award of punitive damages. The imposition of punitive damages is “discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong.” Neil Huffman Volkswagen Cory. v. Ridolphi, 378 So.2d 700, 702 (Ala.1979). “Moreover, a jury’s verdict is presumed to be correct, and will not be set aside as excessive, unless the amount is so great as to plainly indicate that it was the result of passion, bias, prejudice or improper motive.” Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 at 915 (1981); U-Haul Co. of Alabama v. Long, 382 So.2d 545 (Ala.1980).
After reviewing the evidence in this case, we find that the verdict was not the product of an improperly functioning jury.
We note that Fruehauf requested a new trial on the ground that the award was excessive. In denying the motion for a new trial, the trial judge sufficiently stated his reasons in accord with the requirements of Hammond v. City of Gadsden, 493 So. 2d 1374 (Ala.1986). Thus, we need not remand this cause under that authority.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. Apparently, the serial number of all Fruehauf vehicles contains this same code, since the serial number is incorporated into the VIN (the last eight letters and digits are identical) and includes the letter that indicates the model year.